**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| RANDALL A. CASTELLANI AND JOSEPH CORCORAN, | : No. 117 MAP 2014 |
| | : |
| | : Appeal from the Order of the Superior |
| Appellants | : Court at No. 907 MDA 2012 on March 11, |
| | : 2014, affirming the Order of the |
| | : Lackawanna County Court of Common |
| v. | : Pleas, Civil Division, at No. 2005 CV 69, |
| | : filed August 19, 2011 |
| | : |
| THE SCRANTON TIMES, L.P., T/D/B/A | : |
| THE SCRANTON TIMES AND THE | : |
| TRIBUNE, AND JENNIFER HENN, | : ARGUED:  April 8, 2015 |
| | : |
| Appellees | : |
| | : |

**OPINION**

**MR. JUSTICE BAER**                    **DECIDED:  October 27, 2015**

In this defamation action, Randall A. Castellani and Joseph J. Corcoran (Appellants) brought suit against The Scranton Times and its former reporter, Jennifer L. Henn (collectively, the Newspaper) regarding the Newspaper's publication of three articles concerning Appellants' testimony before the Twentieth Statewide Investigating Grand Jury.  The trial court denied Appellants' pretrial motion to admit two judicial opinions at trial as evidence of the Newspaper's state of mind, and the Superior Court affirmed.  Upon review, we reverse.  Because the judicial opinions are admissible as

evidence of the Newspaper's state of mind, the trial court should have permitted Appellants to introduce them in their action against the Newspaper.

Appellants are former Lackawanna County Commissioners and members of the Lackawanna County Prison Board who, in December 2003, testified before a statewide investigating grand jury looking into alleged corruption at the Lackawanna County Prison. The prison scandal was news in the Lackawanna County area, and on January 12, 2004, the Newspaper published an article reporting on Appellants' grand jury testimony. The article, entitled "Dems Stonewall," cited an anonymous source close to the grand jury proceedings who described Appellants' testimony as vague, less than candid, and evasive; reported that Appellants had "stonewalled" the proceedings and been uncooperative with the grand jurors; and the jurors were so irritated with them that they were "ready to throw both of them out." Castellani v. Scranton Times, L.P., 956 A.2d 937, 940 (Pa. 2008) (quoting Jennifer Henn, Dems Stonewall, SCRANTON TIMES, Jan. 12, 2004, at 1).

Because the January 12, 2004 article appeared to reflect a breach of grand jury secrecy, Appellants moved for sanctions against the Office of Attorney General for leaking secret grand jury information.[1] Senior Judge Isaac Garb, the presiding judge of the grand jury, appointed a special prosecutor to investigate whether there had been an impermissible breach of grand jury secrecy. Following the investigation, Judge Garb reviewed the special prosecutor's report and the grand jury transcripts (neither of which

---

[1]    See 42 Pa.C.S. § 4549 (providing for disclosure of grand jury information only in limited circumstances; "[o]therwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court. All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.").

were public), and, on September 14, 2004, publicly released a memorandum evaluating whether there had been a violation of grand jury secrecy. Based on his review, Judge Garb concluded there was no breach of the grand jury proceedings from the Office of the Attorney General or otherwise, and the January 12, 2004 article was at odds with the transcript of Appellants' testimony:

> . . . The reports published in these newspapers are completely at variance with the transcript of the testimony of these witnesses. The newspaper reports provide that the witnesses were evasive in their answers, were non-cooperative, essentially "stonewalled" the Grand Jury in its inquiry and that the Grand Jurors became irate as a result of that demeanor on the witnesses' part, and demanded that they be "thrown out" of the Grand Jury courtroom. None of those things happened. . . . The report of the testimony of the witnesses was totally at variance and not borne out by the record of the witness' testimony.

Castellani, 956 A.2d at 940-41 (quoting In re: The Twentieth Statewide Investigating Grand Jury, 15 M.D. 2003, Notice No. 16, at 2 (Pa.Com.Pl. Dauphin Sept. 14, 2004)). Judge Garb further queried whether the Newspaper's source was in fact someone who was not really privy to the proceedings at all. Id. ("Obviously, the source of the reporter's information was someone not privy to the Grand Jury proceedings and, therefore, not someone in the Office of the Attorney General.").

Thereafter, on September 18, 2004, the Newspaper published a second article reporting on Judge Garb's opinion, which included several quotes from the opinion, and stated that "[t]he newspaper's source has been contacted and says he absolutely stands by his account of the grand jury testimony," essentially ratifying its January 12, 2004 article. David Singleton, Judge: Account of Testimony was Incorrect, SCRANTON TIMES, Sept. 18, 2004, at 1-2.

Senior Judge Barry F. Feudale succeeded Judge Garb as the grand jury's presiding judge. In January of 2005, Appellants filed a defamation action against the

Newspaper premised on the January 12, 2004 article and moved to compel disclosure of the Newspaper's source.[2] Appellants further petitioned Judge Feudale to release the special prosecutor's report and the transcript of Appellant Corcoran's grand jury testimony.[3] Judge Feudale denied Appellants' motion for the special prosecutor's report and Appellant Corcoran's transcripts in an order and supporting opinion dated June 29, 2005. According to Judge Feudale, grand jury secrecy outweighed Appellants' need to obtain the information for private litigation. Nevertheless, Judge Feudale, like Judge Garb before him, further opined that the characterizations of Appellants' grand jury testimony contained in the January 12 and September 18 articles had no factual basis:

> . . . [Appellants'] testimony was either erroneously or egregiously reported and mischaracterized by the article[s] that are the subject of the defamation action. . . . In this case the source and the newspaper apparently not only knowingly asserted and published as alleged facts that which they acknowledge is illegal to assert/publish, but reaffirmed such in contravention of facts that both Judge Garb and now this Court (after our own review of the testimony of [Appellants]) assert have no foundation in the record of the testimony under dispute before the grand jury.

In re: The Twentieth Statewide Investigating Grand Jury, 15 M.D. 2003, Notice No. 16, (Pa.Com.Pl. Dauphin June 29, 2005)), Reproduced Record (R.R.) 38.

---

[2] The trial court granted Appellants' motion to compel disclosure of the source, and the Newspaper appealed. The Superior Court reversed the order granting disclosure, and, on further appeal, this Court affirmed the Superior Court, stating that the Pennsylvania Shield Law, 42 Pa.C.S. § 5942, prohibited compelled disclosure of the identity of the confidential source. Castellani v. Scranton Times, LP., 956 A.2d 937 (Pa. 2008).

[3] A member of the county prosecutor's office or the Office of Attorney General had already inadvertently released Appellant Castellani's grand jury testimony.

On July 7, 2005, the Newspaper published a third article disputing Judge Feudale's conclusions and, once again, supporting its source from the grand jury. Describing the defamation litigation, the article provided as follows:

> [Appellants] claim they were defamed in Jan. 12, 2004 article [sic] published by the [Newspaper] describing their testimony before the grand jury as vague and evasive. The article cited to an anonymous source close to the investigation. The former commissioners claim the story is false. The [N]ewspaper stands by its report.

Michael McNarney, Judge Won't 'Crack the Vault' of Grand Jury Secrecy, SCRANTON TIMES, July 7, 2005. The article further predicted that the Newspaper's reporting would be vindicated. Id.

Appellants initiated a second defamation action in 2005 premised on the September 18, 2004 (second) article, which was consolidated with the first. Following resolution of the Shield Law dispute by this Court in 2008, the parties engaged in extensive discovery and cross-filed for summary judgment in December 2010. Appellants opposed the Newspaper's motion for summary judgment by arguing that, having reviewed the Garb and Feudale opinions, the Newspaper's decision to republish its original accusation and to stand by the account of its source was evidence of the Newspaper's state of mind, and therefore admissible to establish actual malice and reckless disregard for truth or falsity in publishing both the January 12, 2004 and September 18, 2004 articles.[4]

---

[4] As will be discussed herein, if the plaintiff in a defamation action is a public official or public figure, such as Appellants, and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice, Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania, 923 A.2d 389, 400 (Pa. 2007), which can be proven by demonstrating that the defendant subjectively "acted with reckless disregard for the truth '[by entertaining] serious doubts as to the truth of (…continued)

At oral argument on the competing summary judgment motions, the court ordered separate briefing on the question of the admissibility of the Garb and Feudale opinions. Appellants filed a supplemental brief contending that the trial court should take judicial notice of the opinions as evidence of falsity and actual malice, relying on Rule 201.[5] In a separate argument, Appellants contended that under Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899 (Pa. 2007), which held that republication of a defamatory statement is relevant and admissible to prove the publisher's state of mind concerning actual malice in regard to the initial publication, the Garb and Feudale opinions should be admitted as evidence of the Newspaper's state of mind as implicating actual malice, or reckless disregard for the truth or falsity of the challenged articles.

In Weaver, a police officer was accused by a convicted murderer of raping her in the course of the investigation into the murder. The accusation was highly publicized, and the individual eventually sued for defamation, Oscar Lee Brownstein, wrote a letter to the editor of the Intelligencer Journal of Lancaster, in which he echoed the rape allegations, and further stated that the officer had been arraigned in the past for the sexual abuse of women and children. Id. at 901. The newspaper published the letter. When no criminal charges were brought against the officer, he sued Mr. Brownstein and the newspaper for defamation, averring that the allegations were false. Shortly

_____

(continued…)

his publication.'" Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899, 903 (Pa. 2007) (quoting Norton v. Glenn, 860 A.2d 48, 55 (Pa. 2004)).

[5]     Rule 201 provides for judicial notice of adjudicative facts, and defines such a fact as not being subject to reasonable dispute, generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Pa.R.E. 201(a), (b).

thereafter, a website dedicated to freeing the murderer republished the letter in full with Mr. Brownstein's permission. In the defamation suit, the trial court granted the defendants' motion for summary judgment, and the Superior Court affirmed.

On further appeal to this Court, we accepted review in Weaver to determine whether the republication of the letter could be used as substantive evidence of the author's "actual malice" in publishing the letter the first time.[6] Id. at 900. We began our analysis by noting that actual malice can be proven by demonstrating that the defendant subjectively "acted with reckless disregard for the truth '[by entertaining] serious doubts as to the truth of his publication.'" Id. at 903 (quoting Norton v. Glenn, 860 A.2d 48, 55 (Pa. 2004)).

We then noted that the Restatement (Second) of Torts § 580A, cmt. d, provides that "[r]epublication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard." Id. at 905-06. In conformity with this section of the Restatement, we held in Weaver that where a publisher is on notice that the statement may be false, republication of an alleged defamatory comment may be used as evidence of the defendant's state of mind and actual malice in regard to the prior publication because the second publication "tends to indicate a disregard for the truth that may have been present at the time of the initial publication." Id. at 905. We concluded that the second publication had to be relevant and competent, and, to the extent that it was, this

---

[6] Actual malice in this context means that Mr. Brownstein published the letter in the newspaper with knowledge that his statements concerning the police officer were false or that he acted with reckless disregard to their falsity. Weaver, 926 A.2d at 901-02.

republication would provide insight into the publisher's state of mind and was thus admissible. Id. at 906. The weight of the evidence was for the jury. Id.

Relying on Weaver, Appellants herein argued to the trial court that like the plaintiff's complaint in that case, which put the defamation defendant on notice of the potential falsity of the allegedly defamatory statement, the Garb opinion was admissible as evidence of notice to the Newspaper that the statements contained in the January 12, 2004 (first) article may be false, and that the republication of the allegedly defamatory statements contained therein was evidence of the Newspaper's actual malice relative to that article. Appellants similarly argued that the Garb and Feudale opinions were admissible as evidence of notice that the statements contained in the September 18, 2004 (second) article may be false, and that the republication of the allegedly defamatory statements contained therein was evidence of the Newspaper's actual malice relative to that article. The Newspaper ignored Appellants' reliance on Weaver and its discussion of the relevancy of state of mind evidence. Instead, it argued that the Garb and Feudale opinions were inadmissible hearsay, and then bootstrapped from that premise to contend that inadmissible hearsay may not be introduced into evidence through judicial notice. This analysis, according to the Newspaper, was dispositive of the issue before the trial court.

On March 4, 2011, the trial court denied both parties' motions for summary judgment, without considering the Garb or Feudale opinions or their purported admissibility. On June 8, 2011, the trial court separately addressed the admissibility of the two judicial opinions, resolving the matter purely by analyzing Rule 201 (judicial notice) and not addressing Appellants' Weaver/relevancy/state of mind argument. Specifically, the trial court held that it could not take judicial notice of the Garb and

Feudale opinions or the contents thereof pursuant to Rule 201 because the opinions did not contain undisputed facts. See Pa.R.E. 201(b) (defining adjudicative facts subject to judicial notice as not being subject to reasonable dispute, generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). Rather, in the trial court's opinion, the judicial opinions contained hearsay, as they pertained to what the special prosecutor's report stated, and whether the grand jury transcripts supported the Newspaper's characterization of the jurists' sentiments. The trial court considered that this hearsay was being offered by Appellants for the truth of the matters asserted therein, i.e., that the Newspaper published false statements concerning Appellants, and therefore was inappropriate as a subject of judicial notice.[7]

The trial court ordered that the portions of Judge Garb's opinion which appeared in the September 18, 2004 article were admissible, but that the remainder constituted inadmissible hearsay. The trial court ruled that the entirety of Judge Feudale's opinion was inadmissible hearsay. As noted, despite Appellants' argument that the Garb and Feudale opinions were relevant and admissible pursuant to Weaver as relevant evidence of the Newspaper's state of mind, the trial court did not discuss this argument or address Weaver.

Appellants moved for reconsideration of the June 8, 2011 order, urging the trial court to consider Weaver and their arguments that the Garb and Feudale opinions were

---

[7]     In an order dated April 11, 2012, the trial court concluded that the July 7, 2005, article was admissible as evidence of actual malice, but declined to rule on the admissibility of the excerpts of the Feudale opinion contained therein. The Newspaper appealed this ruling, which is presently on hold before our Court pending the outcome of this case.

admissible pursuant to that case. Appellants also sought an order certifying the order for immediate interlocutory review. Although the trial court denied substantive relief, it certified the June 8, 2011 order for appeal. When the Superior Court denied Appellants' petition for review, they appealed to this Court, which granted the petition, vacated the Superior Court's order, and remanded with direction to the Superior Court to consider the admissibility of the Garb and Feudale opinions. See Castellani v. Scranton Times, LP., 41 A.3d 852 (Pa. 2012), *as amended*, 41 A.3d 1285 (Pa. 2012).

On remand from this Court, a panel of the Superior Court affirmed the decision of the trial court that the Garb and Feudale opinions are inadmissible. Castellani v. The Scranton Times, 907 MDA 2012 (March 11, 2014).[8] Appellants argued to the Superior Court that the judicial opinions were relevant and admissible pursuant to Weaver as evidence of the Newspaper's malicious state of mind, and were not, as the trial court concluded, inadmissible hearsay.

The Superior Court, however, distinguished Weaver on its facts. According to the Superior Court, the notice of potential falsity in Weaver came from the plaintiff's defamation complaint that informed the author that his statement was false, "as tested against public record." Super. Ct. Mem. Op. at 45. Specifically, the defamatory statement in Weaver included an assertion that the police officer had been arraigned on charges of sexual molestation, a fact which the police officer denied in his defamation complaint and which could have been tested by reviewing the public record. The Superior Court reasoned that unlike the complaint in Weaver, the facts contained in the Garb and Feudale opinions could not be verified against the public record because of

---

[8] Judge Gantman authored the Superior Court opinion, while Judges Bowes and Olson concurred in the result.

their association with secret, grand jury proceedings. Accordingly, based on this factual distinction, the Superior Court held that unlike the defamation complaint in Weaver, the Garb opinion was not relevant evidence "that rises to the level of official 'notice' sufficient to cause the [N]ewspaper to doubt its articles or to show the [N]ewspaper's actual malice'" with regard to the publication of any of the articles. Super. Ct. Mem. Op. at 47. Examining the Feudale opinion, the Superior Court held that it was rife with dicta, and therefore also irrelevant, as "incompetent evidence of the newspaper's state of mind when it published either the September 18, 2004 or, by implication, the January 12, 2004 article." Id. at 48.

Switching its focus from the relevancy analysis of state of mind evidence in Weaver to hearsay, the Superior Court agreed with the trial court that the judicial opinions were inadmissible hearsay. The Superior Court explained that because "the jurors would have to consider and accept the substance of the Garb Opinion and the Feudale Opinion to understand what the Opinions were being offered to prove," they were hearsay which could not be admitted even with a limiting instruction. Id.

Finally, the panel opined about the unfair prejudice it perceived if the opinions were admitted, noting that there is an increased risk that juries will improperly decide issues based upon evidence or statements from jurists. Id. at 49-50 (citing Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993)). The Superior Court thus precluded Appellants from introducing the judicial opinions in their entirety at trial as evidence of the Newspaper's reckless disregard for the truth or falsity of the January 12, 2004 and September 18, 2004 articles.

Appellants appealed to this Court, and we granted review to decide two issues:

(1) Whether in excluding Judge Garb's [Opinion] and Judge [Feudale's] Opinion as inadmissible hearsay, the Superior Court misapplied this

Court's controlling authority under Weaver v. Lancaster Newspapers, Inc., 592 Pa. 458, 926 A.2d 899 (2007), where both documents provided [the] Newspaper with strong grounds for believing that, before republishing the defamatory content of a January 12, 2004 article reporting on [Appellants'] testimony before a statewide investigating grand jury, the content of the January 12, 2004 article was false.

(2) Whether the Superior Court erred in its alternative holding that Judge Garb's [Opinion] and Judge Feudale's Opinion should be excluded under Pa.R.E. 403 on prejudice grounds, where both documents are elemental evidence of [the Newspaper's] state of mind and reckless disregard for the truth or falsity of [the Newspaper's] January 12, 2004 and September 18, 2004 articles reporting on [Appellants'] grand jury testimony.

Castellani v. Scranton Times, L.P., 101 A.3d 782 (Pa. 2014).

Addressing the first issue on appeal, Appellants continue to rely on Weaver, which they assert stands for the proposition that once a defendant has information that provides grounds for questioning the veracity of a prior publication, the defendant's republication of the same statement is relevant, competent evidence of the defendant's state of mind and reckless disregard for the potential truth or falsity of the republication as well as the initial publication. See Weaver, 926 A.2d at 906 ("Republications, retractions and refusals to retract are similar in that they are subsequent acts used to demonstrate a previous state of mind."). According to Appellants, evidence of a publisher's actual malice may include evidence which should have put the publisher on notice of the potential falsity of the initial publication.

Whether the relevant portions of the Garb and Feudale opinions are dicta is irrelevant, according to Appellants, because the opinions should have given the Newspaper pause to question the veracity of its initial publication, even more so than the self-serving complaint filed by the plaintiff in Weaver. Addressing the Superior Court's concern that the Newspaper had no way to verify Judge Garb's personal views as recounted in his opinion, Appellants argue that nowhere in Weaver did this Court

evince a concern for a defendant's ability to verify independently the veracity of information that should have put the publisher on notice of potential falsity.

Turning to whether the judicial opinions are inadmissible hearsay, Appellants argue that because they are not being admitted for their truth, hearsay concerns are not implicated. Rather, according to Appellants, the judicial opinions are admissible as evidence of the Newspaper's state of mind; jurors would not be required to accept as true the substance of the judicial opinions, but only that the Newspaper had read the opinions before republishing the defamatory contents of the January 12, 2004 article.

Addressing the second issue on appeal, Appellants disagree with the Superior Court's holding that even if the two judicial opinions were admissible under Weaver as relevant evidence of the Newspaper's state of mind, they should be excluded because of the potential for unfair prejudice under Rule 403. According to Appellants, the introduction of evidence of actual malice is, by its nature, prejudicial; it is not, however, unduly prejudicial. In this regard, Appellants argue that any undue prejudice could be ameliorated by a proper cautionary jury instruction informing the jury that the judicial opinions should be considered only in deciding actual malice, and not whether the Newspaper's January 12, 2004 and September 18, 2004 articles were false.

With regard to the first issue on appeal, whether the judicial opinions are relevant evidence under Weaver, the Newspaper takes a narrow view of Weaver to assert that our holding therein was premised on the fact that the defendant republished his defamatory statement about the police officer's arraignment even after he had been alerted by the plaintiff's complaint that the statements were verifiably false (because they could be tested against the public record), which could support an inference of actual malice when the initial statement was made. The Newspaper emphasizes that

this inference flows only from a defendant's decision to republish the defamatory statement despite notice that the statements are verifiably false. In this respect, the Newspaper relies on a Superior Court case which held that publication of a statement in the face of the plaintiff's denial of the truth of that statement may be probative of actual malice only if the denial is verifiable, see Curran v. Philadelphia Newspapers, Inc., 546 A.2d 639, 642 (Pa.Super. 1988) (stating that to allow an inference of actual malice when a defendant publishes a defamatory statement in the face of the plaintiff's denial, the denial must be "verifiable"), and argues that the assessment of whether republication evidence is relevant to actual malice should be no less stringent.

Premised on the purported criteria of verifiability, the Newspaper argues that the Garb and Feudale opinions do not meet this criterion as they did not provide it with verifiable notice of falsity. In this respect, the Newspaper argues that the notice document in Weaver (the plaintiff's defamation complaint) alerted the defendant to the falsity of the objectively verifiable fact that the plaintiff had never been arraigned for a crime, a matter of public record. By contrast, according to the Newspaper, the judicial opinions were not verifiable and therefore did not provide it with obvious reason to doubt the veracity of its January 12, 2004 article, and cannot support a reasonable inference of actual malice resulting from the subsequent articles. The Newspaper perceives this difference to be dispositive.

The Newspaper further focuses on the fact that neither Judge Garb nor Judge Feudale were present when Appellants testified before the grand jury, and their review of the cold record could not reveal anything about the jury's reaction to their testimony, which was the subject of the Newspaper's articles. Characterizing the judicial opinions as mere personal views rather than factual adjudications, the Newspaper asserts they

are non-binding dicta entitled to no weight or authority and are insufficient to provide notice of falsity that would lead to a reasonable inference of malice arising from republication. According to the Newspaper, the Superior Court properly applied Weaver to these facts and concluded that the judicial opinions were not relevant to actual malice because they did not amount to a verifiable denial or otherwise provide it with an obvious reason to doubt the veracity of its reporting.

Even if the judicial opinions are relevant under Weaver, the Newspaper contends that they are inadmissible as hearsay because the jury would need to accept the opinions as true in order to draw any inference of actual malice. See Pa.R.E. 801(c) (defining hearsay as an out-of-court statement made by the declarant that a party "offers in evidence to prove the truth of the matter asserted in the statement."). The Newspaper continues that permitting the jury to hear the judges' hearsay impressions about a newspaper article reporting on what the grand jurors said and how they felt about Appellants' testimony would be fundamentally unfair because none of the individuals would be in court and subject to cross-examination. According to the Newspaper, Appellants' argument that the judicial opinions are being offered merely to show that the Newspaper had notice of their content (casting doubt on its source) does not cure the hearsay problem because the jurors would have to believe the judges' statements contained therein to understand what the opinions were being offered to prove. Nor would a limiting instruction cure the risk that the jury would consider the judicial opinions for their truth because, the Newspaper argues, the court's instruction would absurdly have to advise the jury as follows: that it could consider the judicial opinions as evidence that the Newspaper knew its January 12, 2004 article was false

(or recklessly disregarded whether it was false), but that it could not consider the opinions as evidence of whether the article actually was false.

The Newspaper continues that the judicial opinions are not admissible to prove the Newspaper's state of mind. In this respect, the Newspaper asserts that state of mind evidence is only admissible to show the declarant's state of mind. According to the Newspaper, the judicial opinions are not evidence of its state of mind because the Newspaper did not author the opinions. The Newspaper further adds that it is unable to verify what the judges asserted in their opinions due to grand jury secrecy, and stresses that even if it could review the grand jury record, the transcripts would not reflect the grand jurors' impressions of Appellants' testimony, which was the subject of its January 12, 2004 article.

Turning to the second issue on appeal, the Newspaper argues that if the judicial opinions are relevant and are not considered inadmissible hearsay, they should still be excluded from evidence because of their insignificant probative value and potential for unfair prejudice. See Pa.R.E. 403.[9] According to the Newspaper, the judicial opinions are only marginally probative because they include dicta, based on unknown and inaccessible evidence. Additionally, according to the Newspaper, the judicial opinions carry with them unfair prejudice because, being authored by judges, they would be persuasive to the jurors on whether the Newspaper published its articles with reckless disregard for falsity. The Newspaper continues that it is for the trial court and the jury, not Judge Garb or Judge Feudale, to decide whether Appellants have met their burden

---

[9]  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

of proof.  As judicial opinions, according to the Newspaper, this evidence would have an undue tendency to cause the jury to decide the case on an improper basis.  See e.g., Nipper, 7 F.3d at 418 ("[J]udicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd., 505 F.Supp. 1125, 1186 (E.D. Pa. 1980)).

Although we review evidentiary rulings under an abuse of discretion standard, Zieber v. Bogert, 773 A.2d 758, 760 n.3 (Pa. 2001), in this case we granted review to determine whether the trial court's evidentiary ruling was based on a misapplication of Weaver.  To the extent the trial court's ruling turned on a question of law, our scope of review is plenary, id., and the standard of review is *de novo*, Commonwealth v. Hicks, 91 A.3d 47, 52 (Pa. 2014).

The parties agree that to be admissible, the judicial opinions must clear three evidentiary hurdles.  First, the evidence must be relevant.  Weaver, 926 A.2d at 905.  Second, the evidence must be admissible, which, in this context, requires that the evidence is not inadmissible hearsay.  Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute.").  Third, the evidence must be probative and not unfairly prejudicial.  Pa.R.E. 403.  Before we address whether the two judicial opinions are admissible, however, we examine the relevant law regarding defamation.

The Uniform Single Publication Act sets forth the elements of a *prima facie* defamation case, placing on the plaintiff the burden of proving as follows:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a). Where the plaintiff has met this burden, it is the defendant's burden to prove the following:

(1) The truth of the defamatory communication.
(2) The privileged character of the occasion on which it was published.
(3) The character of the subject matter of defamatory comment as of public concern.

Id. at § 8343(b).

Precedent has further developed that where the plaintiff is a public official, he or she may not recover damages for a defamatory falsehood that relates to his or her official conduct "unless he proves that the statement was made with 'actual malice' - that is, with knowledge that it was false or with reckless disregard of whether it was false. . ." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). See also Time, Inc. v. Pape, 401 U.S. 279, 284 (1971); St. Amant v. Thompson, 390 U.S. 727, 731 (1968); Sprague v. Walter, 543 A.2d 1078, 1083-84 (Pa. 1988); Curran v. Philadelphia Newspapers, Inc., 439 A.2d 652, 662 (Pa. 1981). "[P]roof of 'actual malice' calls a defendant's state of mind into question." Curran, 439 A.2d at 662 (quoting Hutchinson v. Proxmire, 443 U.S. 111, 120 n.9 (1979)). In this respect, to establish that the defendant acted with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Weaver, 926 A.2d at 903 (quoting Norton, 860 A.2d at 55). See also Curran, 546 A.2d at 642. Moreover, we have explained that actual malice can be shown where "the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation," or "where there are

obvious reasons to doubt the veracity of the informant or the accuracy of his reports." Weaver, 926 A.2d at 903 (quoting St. Amant, 390 U.S. at 732).

The difficulty of meeting the burden to establish actual malice is demonstrated in St. Amant, where the Supreme Court specified that this evidentiary burden requires more than consideration of whether a reasonable person would have published the statement without further investigation; rather, it requires the plaintiff to present evidence sufficient "to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." 390 U.S. at 731.

The burdens of production and persuasion as to both falsity and "actual malice" are on the public official-plaintiff. See New York Times, 376 U.S. at 279; Philadelphia Newspapers v. Hepps, 475 U.S. 767, 776 (1986). It is Appellants' burden, therefore, to prove that the January 12 and September 18, 2004 articles were false and that the Newspaper published them either with knowledge of their falsity or with reckless disregard for whether they were true or false. They seek to meet the burden of proving actual malice, at least in part, by relying on the judicial opinions authored by Judges Garb and Feudale as providing notice of potential falsity, and on the republication of the allegedly defamatory statements following such notice. With this background in mind, we will examine whether the judicial opinions constitute relevant, admissible evidence that is not unduly prejudicial.

Addressing first the relevance of the two judicial opinions, and despite the Newspaper's arguments to the contrary, this case is resolved by a straightforward application of Weaver. Evidence is relevant if it tends to establish some fact material to the case, or if it tends to make a fact at issue more or less probable. Weaver, 926 A.2d at 905 (citing Commonwealth v. Scott, 389 A.2d 79, 82 (Pa. 1978)); Pa.R.E. 401.

<u>Weaver</u> squarely confronted the relevance of republication evidence in a defamation action to prove the defendant's actual malice at the time of the initial publication. In <u>Weaver</u>, we held that the Superior Court in that case erred as a matter of law when it decided that the republication of the letter, made after the plaintiff filed his defamation complaint, was irrelevant to an inquiry of actual malice at the time of the first publication. 926 A.2d at 905. Relying on the Restatement (Second) of Torts § 580A, cmt. d (2006),[10] and <u>Herbert v. Lando</u>, 441 U.S. 153, 164 n.12 (1979) (providing that "[t]he existence of actual malice may be shown in many ways," including direct or circumstantial competent evidence of prior or subsequent defamations, and subsequent statements of the defendant), we held that republications, retractions, and refusals to retract are similar in that they are subsequent acts "which can be relevant to the determination of previous states of mind." <u>Weaver</u>, 926 A.2d at 906.

Because evidence of Mr. Brownstein's subjective mental state at the time he first published his letter was an element of a *prima facie* case of defamation, we held that evidence showing that he republished the statement (accusing the police officer of having been arraigned on charges of sexual molestation), after the police officer's complaint put him on notice that the accusation "might be false," would inform the jury's inquiry on this fact by making it more probable that he was either aware of the falsity of the statement or "acted recklessly with regard to the truth at the time of the initial publication." <u>Id</u>. at 905.

---

[10] The Restatement (Second) of Torts § 580A, cmt. d (2006), as quoted <u>supra</u>, provides that "[r]epublication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard."

The same conclusion results from the relevance inquiry in this case. The fact at issue is the Newspaper's subjective state of mind at the time it published the first article on January 12, 2004, and the second article on September 18, 2004. Evidence showing that the Newspaper republished the facts initially alleged in the January 12, 2004 article after Judge Garb's judicial opinion put it on notice that those facts may be false, and again after Judge Feudale's opinion provided similar notice, informs the jury's inquiry by making it more or less probable that the Newspaper either knew the information its source had provided was false or that it acted in reckless disregard for the truth at the time of the initial publication.

The Newspaper and the Superior Court attempt to distinguish the notice provided to the defamation defendant in Weaver from the notice provided to the Newspaper by the judicial opinions herein by describing the Garb and Feudale opinions as dicta, representing merely the personal opinions of the judges. Whether the statements contained within the judicial opinions can be properly characterized as dicta, however, misses the point. The judicial opinions are relevant because they put the Newspaper on notice that it should question the veracity of its initial publication, and are not made irrelevant for this purpose by an examination of whether they include dicta or are premised on the judges' personal opinions.[11]

---

[11] It is also questionable whether the judicial opinions may properly be characterized as dicta. As the Commonwealth Court has described, dicta is "an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Dicta has no precedential value." Vally Twp. v. City of Coatesville, 894 A.2d 885, 889 (Pa.Cmwlth. 2006). For example, when Judge Garb issued his decision, he was addressing the source of the grand jury leaks. It was his conclusion that whoever the source was, he was not privy to the grand jury proceedings and, therefore, there was no breach of secrecy by any agent of the Attorney General's office: "Obviously, the source of the (…continued)

Moreover, there is no basis to hold that the plaintiff's complaint in <u>Weaver</u> should put the publisher on notice of potential falsity, but judicial opinions by the two judicial officers overseeing the statewide investigating grand jury should not. The Newspaper has attempted to craft a requirement of verifiability into <u>Weaver</u>, arguing that notice which gives a publisher reason to doubt the truth of a statement is only relevant to establish actual malice where it is verifiable. We did not impose this requirement in <u>Weaver</u>, however. Rather, we held that the defendant "received notice that his allegations were potentially false" when the plaintiff filed the complaint against the defendant. Evidence may put a publisher on notice of potential falsity even where it is not verifiable or indisputable.[12]

---

(continued…)
reporter's information was someone not privy to the Grand Jury proceedings and, therefore, not someone in the Office of the Attorney General." <u>Castellani v. Scranton Times, L.P.</u>, 956 A.2d 937, 940 (Pa. 2008). Rather than constituting dicta, this holding appears to be essential to Judge Garb's decision.

[12] Although we did not require verifiability in <u>Weaver</u>, the Superior Court in <u>Curran</u> noted that a verifiable denial by the subject of a statement is one form that evidence of actual malice may take:

> The term 'reckless disregard' is not amenable to one infallible definition. It is a term which is understood by considering a variety of factors in the context of an actual case. Such factors may be whether the author published a statement in the face of verifiable denials, and without further investigation or corroboration, where allegations were clearly serious enough to warrant some attempt at substantiation. Likewise, evidence of unexplained distortion or the absence of any factual basis to support an accusation may be considered in determining whether the record is sufficient to support a finding of "actual malice."

<u>Curran</u>, 546 A.2d at 642. The Superior Court did not, however, require that notice of a statement's potential falsity be verifiable to be evidence of actual malice; a verifiable denial is just one way for a plaintiff to demonstrate notice of potential falsity.

We therefore reaffirm the holding in Weaver that republication after receiving notice of the potential falsity of the initial publication is relevant to a determination of actual malice in the initial publication as well as the republication. Weaver, 926 A.2d at 905. As applied to the facts herein, Judge Garb's judicial opinion questioning whether the Newspaper's source was privy to Appellants' grand jury testimony, and Judge Feudale's opinion that Appellants' testimony was either erroneously or egregiously reported and mischaracterized, provided notice of the potential falsity of the Newspaper's articles and are relevant to a determination of the Newspaper's actual malice with respect to these articles. Where evidence is relevant to Appellants' threshold issue of actual malice, the question of the weight of that evidence requires an assessment by the fact-finder. The Newspaper's arguments that the judicial opinions did not provide it with sufficient proof that its defamatory statements were false goes to the weight the jury gives to the opinions as evidence of actual malice, not their relevance.

Even if the judicial opinions are relevant under Weaver, the Newspaper further argues they are not competent evidence because they are inadmissible hearsay. See Pa.R.E. 802 (providing that hearsay is not admissible); Pa.R.E. 801(c) (defining hearsay as an out-of-court statement offered into evidence "to prove the truth of the matter asserted in the statement."). A statement that is not offered for its truth, however, is not hearsay. Commonwealth v. Puksar, 740 A.2d 219, 225 (Pa. 1999). Here, Appellants seek to introduce the judicial opinions not for their truth, but to establish the Newspaper's actual malice by showing that the Newspaper had reason to doubt the truth of the defamatory statements. Out-of-court statements offered to establish notice to a defendant are not hearsay. See, e.g., Aldridge v. Edmunds, 750 A.2d 292, 297 n.4

(Pa. 2000) (quoting with approval a Michigan Court of Appeals case, Fletcher v. Ford Motor Co., 342 N.W.2d 285, 288 (Mich. App. 1983), providing that a treatise could be used as evidence for the non-hearsay purpose of raising a presumption of notice to the defendant); Cleland Simpson Co. v. Workmen's Compensation Appeal Bd., 562 A.2d 981 (Pa.Cmwlth. 1989) (holding that out-of-court statements offered as evidence that an employer had notice that the claimant's injury was work-related was not hearsay); Hoffmaster v. County of Allegheny, 550 A.2d 1023 (Pa.Cmwlth. 1988) (holding that an out-of-court statement offered as evidence that the defendant had notice of a dangerous condition was not offered to prove the truth of the matter asserted and therefore was not hearsay).

Similarly to this precedent, Appellants seek to introduce the judicial opinions not as evidence of Judges Garb and Feudale's state of mind, but of the Newspaper's state of mind. Out-of-court statements offered as evidence of what the listener heard, to prove the listener's state of mind, are not offered to prove the truth of the matter asserted, and, therefore, are not hearsay. See, e.g., Commonwealth v. Fisher, 681 A.2d 130, 140 (Pa. 1996) (holding that "[o]ut of court statements by a murder victim may be admitted to establish the motive of the defendant when those statements are not offered to prove the truth of the matter asserted."); Commonwealth v. Griffin, 515 A.2d 865, 871 (Pa. 1986) (holding that out-of-court statements offered as evidence of the defendant's motive were not hearsay). A simple instruction to the jury that it was to consider the judicial opinions as evidence of the Newspaper's actual malice, but not as evidence of the whether the defamatory statements were false, would alleviate the confusion the Newspaper argues will arise from this evidence.

Turning to whether the relevant evidence of the judicial opinions should be excluded because their probative value is outweighed by a danger of unfair prejudice as the Newspaper argues and the Superior Court found, see Pa.R.E. 403, we agree with Appellants in this respect. First, the two judicial opinions are highly probative because they speak directly to the issue of the Newspaper's state of mind at the time of the initial publication and republications, and provided strong evidence that the Newspaper was on notice of their potential falsity. Second, "unfair prejudice" means "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 (comment). This evidence of malice will undoubtedly be prejudicial to the Newspaper. We do not believe, however, that it will suggest a decision on an improper basis. As we explained above, the potential for the jury to consider the judicial opinions for an improper basis, such as evidence of the defamatory statements' falsity, can be ameliorated by a limiting instruction to the jury that it alone must decide whether the Newspaper's articles were published with malice, and the judicial opinions were offered for the limited purpose of supporting Appellants' claim in this regard.[13]

---

[13] We appreciate the thoughtful responses of Chief Justice Saylor and Justice Eakin in their respective concurring and dissenting opinions. We return, however, to the well-established presumption that juries follow the court's instructions. While we acknowledge that the judicial opinions are powerful evidence, many cases involve the admission of powerful evidence with appropriate limiting instructions. We do not believe that the circumstances herein warrant an exception to our general presumption and rhetorically question where we would draw the line regarding admissibility of proper but powerful evidence should we reject the prophylactic effect of limiting instructions.

Additionally, with respect to the responsive opinions' suggestion that the solution to the potential for any unfair prejudice is to bifurcate the falsity and malice elements, we view this decision as appropriate for the trial court upon remand if requested by the Newspaper.

For these reasons, we reverse the Superior Court's order and direct the trial court to allow Appellants to introduce Judge Garb's and Judge Feudale's opinions in their entirety as evidence for the purpose of the jury's consideration of the Newspaper's actual malice in publishing the initial defamatory statements on January 12, 2004, and republishing them on September 18, 2004. The court should provide proper instruction to allow for the use of this evidence for this limited purpose.

Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Chief Justice Saylor files a concurring and dissenting opinion.

Mr. Justice Eakin files a concurring and dissenting opinion.