JUSTICE WECHT, dissenting
By statute, our General Assembly has mandated:
The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents....
23 Pa.C.S. § 2313(a). This is neither a guideline nor a suggestion. It is the law.
In view of this unequivocal statutory command, we very recently held: " Section 2313(a) requires the appointment of counsel who serves the child's legal interests in *1100 contested, involuntary TPR proceedings." In re Adoption of L.B.M. , 639 Pa. 428, 161 A.3d 172, 180 (2017). We observed that, "when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity." Id.[1] We held that "the failure to appoint counsel for a child involved in a contested, involuntary termination of parental rights proceeding is a structural error and is not subject to a harmless error analysis." Id. at 183. We remanded for appointment of counsel and for a new TPR proceeding. Id.
Because four L.B.M. justices agreed that a guardian ad litem ("GAL") who is an attorney can proceed at a TPR hearing to represent both a child's legal interests and her best interests in the event that those interests do not conflict with one another, today's learned Majority approves the trial court's failure to appoint counsel here. In so doing, the Majority validates the lower courts' violation of Section 2313(a).[2]
I respectfully dissent.[3]
As I observed for the plurality in L.B.M. , concerns arise when the dependency GAL serves as legal counsel in the TPR proceeding. L.B.M. , 161 A.3d at 181. When the same lawyer acts in the dual capacity of GAL in dependency proceedings and legal counsel in the TPR hearing, role confusion is likely, particularly in circumstances where the child may direct counsel in the TPR hearing, but may not direct the GAL in the dependency proceeding. See id. The likelihood that dependency proceedings will continue after the TPR petition is filed (as indeed happened here[4] and in L.B.M. , id. at 176 ) renders toggling between the roles of counsel (serving the child's legal interests) and GAL (serving the child's best interests) unsustainable. "To permit the dependency GAL to serve also as the TPR counsel while proceedings in each matter are ongoing increases the risk of confusion and may force the attorney to take conflicting stances in the proceedings depending on the role being performed at the time." Id. Section 2313(a) mandates an independent attorney; the GAL cannot serve both functions. Id. at 181 n.14. The Majority's desire to foster "continuity of representation," Maj. Op. at 1084, does not ameliorate this "two-hat" problem. Nor does it permit us to fashion a judicial nullification of the General Assembly's mandate of legal counsel. For these reasons, I maintain that the attorney-GAL cannot represent the child's legal interests at a contested TPR hearing without running afoul of Section 2313(a).
*1101 Further, as we held in L.B.M. , the child's best interests are for the trial court to determine. L.B.M. , 161 A.3d at 174. Section 2313(a) reflects the General Assembly's policy determination that counsel is required to advocate on behalf of the child's legal interests. Those legal interests may align with or diverge from the child's best interests. Those legal interests may also align with termination or with preservation of the family unit. Because Section 2313(a) counsel represents solely the child's legal interests, I do not support a presumption that a pre-verbal child's legal interests always dovetail with the child's best interests. Nor do I support a presumption that a pre-verbal child's legal interests always equate with preservation of the putative familial bond.[5] The Majority sufficiently refutes Mother's position that our law supports a presumption of preservation. See Maj. Op. at 1092. Instead of leaning on a presumption, Section 2313(a) counsel must make an independent assessment of the child's legal interests. If the child is pre-verbal, then counsel must make use of whatever means are available and appropriate to make that assessment, including, but not limited to, observation of the child with the parents and foster parents and interviews of those involved in the child's case.[6]
I recognize that a majority of Justices in L.B.M. nonetheless would allow an attorney-GAL to wear both hats at a contested TPR hearing, albeit only in the event that the child's best interests and legal interests are not in conflict. Still, today's Majority takes us further afield. The Majority's approach ensures that any such conflicts will likely be obscured and overlooked, and effectively validates post hoc justifications for trial court violations of Section 2313(a)'s commands. At best, today's Majority has failed to provide adequate guidance for determining whether a conflict in fact exists.
In the case at bar, because the children were very young and thus unable to articulate their wishes, the Majority concludes that "there can be no conflict" between the children's best interests and legal interests. Maj. Op. at 1092. Thus, holds the Majority, Section 2313(a) is "satisfied," id. , because the attorney-GAL could represent the children in the contested TPR hearing. The Majority ventures that a child may be able to express "opinions which are entitled to weight in legal proceedings" by the age of "five or six." Id. at 1089 n.17 (quoting Pa.R.P.C. 1.14, Explanatory Comment 1). Quite apart from the issue of whether an explanatory comment to an attorney conduct rule can afford a precedential guide for our courts,[7] the Majority's discussion *1102 effectively begs the question: no standard is provided to guide trial judges.
The determination of whether a particular child can or cannot express her interests or desires must be made by the trial court. Often, this will be a highly fact-specific inquiry based not only upon the child's age, but also upon her relative abilities or disabilities, among many other factors. Further, legal counsel often may be able to glean information about even a pre-verbal child's wishes by observing interactions between the child and parent. This Court cannot create and pronounce a bright-line rule that children of a specific age are able or unable to express their legal interests. The trial court, which can observe the children closely and hear testimony about their particular abilities and circumstances, must do so.[8]
Who makes the decision as to whether a conflict exists between legal interests and best interests? One of the L.B.M. dissenters went so far as to suggest that the attorney-GAL herself should be authorized to make that decision, on the basis of her own assessment of professional conduct standards.[9] I disagree. The General Assembly *1103 mandated that, in a contested TPR hearing, the court must appoint counsel for the child. The matter is not up for debate, much less for judgment call by an individual attorney-GAL. At a minimum, it is the trial court's duty to determine, following argument and likely following hearing,[10] whether the attorney-GAL can continue as legal counsel or whether a new attorney must be appointed. Any other procedure would pay mere lip service to the child's right to counsel, and would work a judicial nullification of that right.
To be sure, the attorney-GAL's opinion as to the existence or non-existence of a conflict between the child's legal interests and best interests is relevant and material to the court's decision. But, before making its determination, the court must hear from the other parties as well. As today's Majority concedes:
The statutory right under Section 2313(a) belongs to the child.... There was no attorney representing solely the children's legal interests who could have raised their rights in the trial court, and the children plainly could not have done so themselves.
Maj. Op. at 1087 (citations omitted). That there will be no one who solely represents the child's legal interests at the time that the trial court appoints Section 2313(a) counsel is precisely why the court must itself determine whether there is a conflict. This analysis may not be delegated or off-loaded to the attorney-GAL.
Following argument (and, preferably, hearing) on the conflict inquiry, the trial court must ensure that the child's right to counsel is protected and must remind all involved that, if the attorney-GAL is permitted to serve as the Section 2313(a) legal counsel, her role has changed from representing best interests to representing legal interests. Additionally, the entry of an appointment order is necessary at the start of the TPR proceedings to drive home the change in role and to provide a reviewing court with the certainty that the child's statutory right to counsel was fully vindicated.[11] I emphasize that it is undisputed that no such order was ever entered by the trial court in this case.
Further complicating the matter is the issue of how these cases should be analyzed on appeal. In L.B.M. , a majority of this Court held that the failure to appoint counsel for a child in a contested TPR hearing was a structural error. L.B.M. , 161 A.3d at 183. Section 2313(a) mandates that counsel be appointed, a circumstance which ensures that all parties, including the child, will have a full and fair opportunity to participate in a contested TPR hearing. "The denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error." Id.
Today's Majority acknowledges this holding, but determines that, because an attorney-GAL representing a child's best interests purportedly satisfies Section 2313(a) when the child cannot verbalize a preference, there was no error in permitting the attorney-GAL here to continue to *1104 represent the children in the TPR proceedings. The Majority proceeds to conclude that, because there was no error, there also could be no structural error. Maj. Op. at 1092. By declaring post hoc that Section 2313(a) was not infringed, the Majority puts the proverbial bunny in the hat. I do not believe that this ex post facto validation suffices. Because the trial court erred in failing to appoint counsel, and in failing to inquire of any potential conflict, the Majority errs in allowing the disposition below to stand untroubled.
The infirmities in the Majority's perspective are illustrated by the lower courts' application of L.B.M. to TPR cases. Unfortunately, it appears that courts are taking a harmless error approach: determining retrospectively that there is no record evidence of conflict between the child's best interests and legal interests, and then proceeding on a bootstrap basis to render an after-the-fact finding that there was no structural error; all this, notwithstanding that there was no opportunity at trial to develop a record of any such conflict or even to provide argument on the question. It is for these reasons that I disagree with the Majority's tacit endorsement of In re D.L.B. , 166 A.3d 322 (Pa. Super. 2017).
In D.L.B. , a Superior Court panel reviewed a challenge to the termination of the father's parental rights. After reciting the trial court's findings regarding the father's failure to meet his goals and participate fully in services provided to him, the Superior Court reviewed and analyzed the trial court's basis for terminating the father's parental rights. Id. at 326-29. After determining that the trial court had sufficient grounds for termination, the Superior Court addressed the father's challenge that the trial court had failed to appoint legal counsel for the child, in violation of L.B.M. The Superior Court reasoned that four Justices in L.B.M. would have permitted the GAL to represent the child in the TPR hearing when the child's best interests and legal interests did not conflict. The entire extent of the Superior Court's analysis of that conflict inquiry was simply the following: "As our decision discusses, [the child's] best interests and legal interests were unquestionably well represented by [the GAL] in this case and such interests were never in conflict." Id. at 329. The Superior Court never identified, much less discussed, the child's legal interests. This type of post hoc ratification of the GAL's continued representation of the child in a TPR hearing is not in accord with L.B.M. 's holding regarding structural error, nor does it satisfy the statutory requirement of counsel.
It appears that lower courts are concluding solely that, if there was sufficient evidence to terminate parental rights, there was necessarily no conflict between the child's best interests and legal interests and, ipso facto , no error. This is a textbook harmless error analysis, and it patently defies L.B.M. 's structural error holding.[12]
Having spent several years presiding in juvenile cases, I recognize and appreciate the importance of delivering permanency to the children involved in these contested TPR proceedings and the value of doing so without undue delay. Nonetheless, in our desire to do right by these children, we cannot overlook or override the right to counsel that the General Assembly has bestowed upon them. By providing post *1105 hoc justification for the failure to appoint independent counsel, that is exactly what today's decision does.

I would not hold the preferences of very young or pre-verbal children, either in favor of termination of parental rights or opposed to it, may never be ascertained.

For purposes of this Concurring and Dissenting Opinion, I refer to such child as a "non-expressive" child.

The Majority further suggests that a majority of Justices in the responsive posture in In re L.B.M. already held that "where a child is too young to express a preference, it would be appropriate for the GAL to represent the child's best and legal interests simultaneously," stating that it was now "expressly reaffirm[ing]" this determination here. Majority Op. at 1088 (citing In re L.B.M. , 161 A.3d at 184 (Saylor, C.J., joined by Todd, J., concurring); id. at 192 (Mundy, J., joined by Baer, J., dissenting). Respectfully, we cannot reaffirm a statement that was never affirmed as a holding. As the Majority recognizes, "that circumstance was not before the L.B.M. Court," as L.B.M. involved an expressive child whose legal interest was contrary to the position represented by his GAL in the termination proceeding. See In re L.B.M. , 161 A.3d at 175-77. Clearly, those statements were pure dicta, which "has no precedential value." Castellani v. Scranton Times, L.P. , 633 Pa. 230, 124 A.3d 1229, 1243 n.11 (2015). This case is the first case that requires the Court to decide, based on developed advocacy, whether there is a legal interest recognized in a non-expressive child.

I also find it significant that when counsel (and not a GAL) represents a child in a dependency matter, the Juvenile Act makes no provision for counsel to represent the child's best interest or to limit the representation of the child based on what counsel can "ascertain" from the child. See 42 Pa.C.S. § 6337.1(a) ; Pa.R.J.C.P. 1151. Rather, as in section 2313 of the Adoption Act, where "counsel" represents a child in a dependency proceeding, the attorney solely represents the child's legal interests, without exception. 42 Pa.C.S. § 6337.1(a) ; Pa.R.J.C.P. 1154.

The legislative session notes from the consideration of House Bill 213 (which contained the original version of section 2313, see 1980, Oct. 15, P.L. 934, No. 163, § 1, effective Jan. 1, 1981) by the General Assembly support my conclusion here. At one point during consideration of the bill by the House, one state representative proposed an amendment thereto that would strike the requirement for the appointment of an attorney to represent the child in contested termination proceedings. See H.B. 213, 48 Pa. Legis. J. - House at 1582 (June 16, 1980) (amendment proposed by Representative Dorr). A majority of the House opposed the amendment, however, with the proponent of the original bill, Representative J. Michael Schweder, explaining, "One of the most important parts or tenets of this current legislation is that for the first time we are going to make the rights of the child equal to those of the natural parents and to the adoptive parents, and one of the necessary requirements for doing that is to provide legal representation for the child in those proceedings." Id. (statement of Representative Schweder) (emphasis added).

Justice Wecht takes no position as to whether a non-expressive child's legal interests are equivalent to the child's best interests. See Dissenting Op. (Wecht, J.) at 1100-01. However, this is the precise issue that is before this Court in this matter, as all participants are in agreement that the children are not capable of expressing a desired outcome. See infra , p. 1099. Justice Wecht further writes to advance a protocol where the orphans' court is tasked with making the determination, in all cases (including this one), whether the child is expressive of her wishes in the termination proceeding. He does not state, one way or the other, what the orphans' court is to do if it agrees with all of the participants in this case that the children are incapable of expressing a preference.

Dependency proceedings continue at the time of the termination hearing and thereafter. Consistent with our Rules of Professional Conduct, an attorney cannot advocate in support of adoption in the dependency proceedings and simultaneously represent the child in opposition to termination in the termination proceeding, as the attorney's representation in the dependency proceeding would be directly adverse to the child's interest in the termination proceeding. See Pa.R.P.C. 1.7(a)(1).

See Womer v. Hilliker , 589 Pa. 256, 908 A.2d 269, 279 (2006) (noting that an explanatory comment is not part of a rule); Estate of Paterno v. Nat'l Collegiate Athletic Ass'n (NCAA) , 2017 PA Super 247, 168 A.3d 187, 200 n.13 (2017) (stating that "explanatory comments express the opinion of the rules drafting committee and therefore are not binding").

Justice Donohue interprets my position as advancing a protocol for determining whether a child is capable of expressing his or her wishes, but not indicating what the court is to do if it finds that the child is non-expressive. See Conc. & Diss. Op. at 1097 n.5. This is incorrect because I only offer this protocol as a comment on the Majority's position that the best interests equate to legal interests when the child is pre-verbal.
As I have explained here and in L.B.M. , the trial court's task is to determine the child's best interests in deciding whether to terminate parental rights while Section 2313(a) counsel represents only the child's legal interests. Because I would not permit the attorney-GAL to be Section 2313(a) counsel, there would be no need to determine whether there is a conflict of interest between legal interests and best interests. Also, because I would not create a presumption in favor of equating a child's best interest to that child's legal interests when the child is pre-verbal, there would be no need for the court to determine if the child is pre-verbal. Instead, as I stated above, see supra at 1101, Section 2313(a) counsel would make an assessment of legal interests using available means.
The only reason that I discuss any protocol, and possibly the reason for Justice Donohue's misstatement of my position, is because a majority of the Court would permit the attorney-GAL to represent the child's legal interests (absent a conflict with best interests). The Court equates those legal interests to best interests when a child is pre-verbal. Hence, I am compelled to work within that framework. So constrained, I suggest the above protocol for determining whether a child is unable to express his or her interests and a protocol for determining whether there is a conflict between those interests. Both of these would offer more protection of the child's statutory right to legal counsel.

See L.B.M. , 161 A.3d at 188 (Baer, J. dissenting) (citing Pa.R.P.C. 1.7 ). Rule 1.7 provides:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent.
Pa.R.P.C. 1.7.

In many cases, a factual record will need to be developed, as (for example) when there is disagreement about whether a child is capable of expressing his or her legal interests.

For these reasons, I note my disapproval of the practice described in this case regarding local custom, whereby the dependency GAL automatically shifts to representing the child in the TPR proceeding. See Maj. Op. at 1090 n. 19. Such a practice gives short shift to the child's statutory right to legal counsel, and, indeed, flouts the legislative mandate.

To be sure, I do not maintain that this happens in every (or even in a majority of) cases. For example, recently, the Superior Court vacated a decree terminating parental rights where the attorney-GAL did not meet with the six-year-old child, did not attempt to ascertain that child's legal interests and, instead, spoke only to the child's best interests at the TPR hearing. In re Adoption of T.M.L.M. , 184 A.3d 585 (Pa. Super. 2018). Still, D.L.B. demonstrates the need for this Court to clarify governing principles.