J-A12030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| RALPH J. REISH, JR., EXECUTOR OF THE ESTATE OF ELIZABETH M. REISH, DECEASED AND RALPH J. REISH, JR., EXECUTOR OF THE ESTATE OF RALPH J. REISH, SR., DECEASED | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : : | No. 2429 EDA 2022 |
| VISITING ANGELS | : | |

Appeal from the Order Entered August 26, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-19136


BEFORE:  OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 21, 2023**

Appellant Ralph J. Reish, Jr., Executor of the Estates of Elizabeth M. Reish and Ralph J. Reish, Sr. (collectively, "Decedents"), appeals from the order sustaining Appellee Visiting Angels' preliminary objections and dismissing Appellant's amended complaint with prejudice.  Appellant contends that the trial court erred in concluding that Appellee did not owe a duty of care to Decedents and that Appellant failed to plead sufficient facts in support of his claims.  We affirm.

The trial court summarized the facts and procedural history of this case as follows:

[Appellant] commenced this wrongful death and survival action against [Appellee] by writ [of summons] on September 22, 2021.

[Appellant] filed a complaint on January 6, 2022, to which [Appellee] preliminarily objected. [Appellant] responded by filing an amended complaint. [Appellee] again filed preliminary objections, which this time were followed by an answer from [Appellant] and a reply from [Appellee].

[Appellant] alleged in the amended complaint that [Appellee] provided non-medical home and personal care services to Decedents in their residence in Pottstown, Montgomery County, between October and December 2020. Ralph J. Reish, Sr., died at the age of 89 on December 20, 2020. Elizabeth M. Reish died on January 2, 2021, at the age of 88. [Appellant] alleged both died from COVID-19[1] because [Appellee] and/or its staff did not take proper COVID-19 precautions, despite being aware of the risks posed to Decedents and the safety protocols necessary to avoid transmission of the disease. The amended complaint demanded compensatory and punitive damages.

Trial Ct. Op., 11/15/22, at 1-2 (citations and footnote omitted).

In his amended complaint, Appellant alleged that Appellee owed Decedents a "duty to exercise reasonable and ordinary care which a reasonably prudent person would exercise" to avoid infecting Decedents with

---

[1] COVID-19 refers to:

A novel coronavirus [that] began infecting humans in China in December 2019. As of March 11, 2020, the World Health Organization ("WHO") announced that the coronavirus, which had spread into at least 144 countries including the United States, had infected at least 118,000 people, and had killed more than 4,000 people, was officially a pandemic.

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 877 (Pa. 2020) (citation omitted); *see also Ungarean v. CNA*, 286 A.3d 353, 357 (Pa. Super. 2022) (stating that "COVID-19 is a novel contagious virus that can cause severe acute respiratory illness. In the first three months of the pandemic, it killed thousands of Pennsylvanians, and over 100,000 people nationwide"), *appeal granted*, --- A.3d ---, 313 WAL 2022, 2023 WL 4530116 (Pa. filed July 13, 2023).

COVID-19. Am. Compl., 2/10/22, at 8-9, R.R. at 12a-13a.[2] Appellant asserted that Appellee and its employees breached that duty because Appellee and its employees failed to take measures such as wearing masks when in Decedents' home, promptly and/or routinely testing employees for COVID-19, monitoring employees' body temperature and checking for other symptoms of COVID-19, or following the COVID-19 protocols set forth by the Centers for Disease Control and Prevention (CDC) and the Pennsylvania Department of Health. R.R. at 8a-12a. Appellant specifically claims that Appellee's employees infected Decedents with COVID-19. R.R. at 9a-10a. Appellant also alleged that as "a direct and proximate result of" the alleged breaches, Appellee "increased the risk of harm to Decedents, who thus became infected with COVID-19 and died as a result thereof." R.R. at 13a.

> After Appellant filed the amended complaint, the trial court explained:

> [Appellee filed] preliminary objections to the amended complaint [asserting] that [Appellant] failed to plead the breach [of] a legal duty. Alternatively, [Appellee] argued [that] the gist of the action doctrine barred [Appellant's] tort claims because the relationship [Appellee] had with Decedents was contractual[,] and [that] the allegations in the amended complaint did not support a demand for punitive damages.

Trial Ct. Op. at 2 (some formatting altered).

On August 26, 2022, the trial court sustained Appellee's preliminary objections and dismissed Appellant's amended complaint with prejudice. Appellant filed a timely appeal. The trial court did not order Appellant to

---

[2] We may cite to the reproduced record for the parties' convenience.

comply with Pa.R.A.P. 1925(b), but the trial court filed a Rule 1925(a) opinion concluding that Appellant's issues were meritless. *See* Trial Ct. Op. at 2-6.

On appeal, Appellant raises the following issues for our review:

1. Whether the trial court erred and abused its discretion in concluding that [Appellee], a non-medical in-home personal care agency, did not owe a duty of care to take reasonable steps to prevent transmission of COVID-19 to its customers, the Decedents, and granting [Appellee's] preliminary objections to [Appellant's] amended complaint with prejudice?

2. Whether the trial court erred and abused its discretion in concluding that the [Appellant's] amended complaint lacked specificity as to when and how [Appellee] infected the Decedents with COVID-19, and relied on speculation and coincidence in alleging that [Appellee's] conduct caused Decedents to contract the disease?

Appellant's Brief at 4 (some formatting altered).

In his first issue, Appellant presents two alternative theories in support of his claim that Appellee owed a duty of care to Decedents. *Id.* at 13-30. We address these theories separately.

**Whether Pennsylvania Already Recognizes a Duty of Care to Avoid Transmitting a Contagious Disease**

In his first theory regarding Appellee's duty of care, Appellant argues that because Appellee had taken affirmative steps to perform services for Decedents, Appellee had a duty to exercise reasonable care when performing those services. *Id.* at 13-15 (citing, *inter alia*, Restatement (Second) of Torts §§ 302, 323 (1965)). Appellant contends that Pennsylvania law recognizes a duty of care to avoid the transmission of a communicable disease. *Id.* at 16-19 (citing ***Billo v. Allegheny Steel Co.***, 195 A. 110, 111-14 (Pa. 1937);

*Smith v. Walker*, 11 Pa. D. & C. 4th 663, 663-65 (C.C.P. Cumberland 1991)).

Therefore, Appellant concludes that Appellee's duty to exercise reasonable

care when performing services on behalf of Decedents included a duty to

employ reasonable precautions to prevent the spread of COVID-19, and that

Appellant has pled a cause of action in negligence for Appellee's breach of that

duty. Appellant's Brief at 16, 19.

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Am. Interior Const. & Blinds Inc. v. Benjamin's Desk, LLC*, 206 A.3d

509, 512 (Pa. Super. 2019) (citation omitted). "To be clear and free from

doubt that dismissal is appropriate, it must appear with certainty that the law

would not permit recovery by the plaintiff upon the facts averred." *McGuire*

*v. Shubert*, 722 A.2d 1087, 1090 (Pa. Super. 1998) (citation omitted).

> It is well-established:
>
> Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar

- 5 -

circumstances. . . . To establish a *prima facie* case of negligence, a plaintiff must plead that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage.

**Walters v. UPMC Presbyterian Shadyside**, 187 A.3d 214, 221 (Pa. 2018) (citations and quotation marks omitted).

"Whether a duty exists under a particular set of facts is a question of law." **Herczeg v. Hampton Twp. Mun. Auth.**, 766 A.2d 866, 871 (Pa. Super. 2001) (citations and quotation marks omitted). "In scenarios involving an actor's affirmative conduct, he is generally under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act." **Seebold v. Prison Health Servs., Inc.**, 57 A.3d 1232, 1246 (Pa. 2012) (citing, *inter alia*, Restatement (Second) of Torts § 302, cmt. a (1965)) (quotation marks omitted). However, "Section 302 [of the Restatement] does not in itself create a duty. Rather, it defines what acts may constitute negligence, assuming that a duty is independently established." **Moore v. Commonwealth, Dep't of Justice**, 538 A.2d 111, 118 (Pa. Cmwlth. 1988) (citation omitted).[3]

Further, our Supreme Court has accepted the Restatement (Second) of Torts § 323 as an accurate statement of Pennsylvania law. **See, e.g.**, **Gradel v. Inouye**, 421 A.2d 674, 677-78 (Pa. 1980).

---

[3] Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority. **See Maryland Cas. Co. v. Odyssey Contracting Corp.**, 894 A.2d 750, 756 n.2 (Pa. Super. 2006).

Section 323 states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). However, Section 323 does not "change the burden of a plaintiff to establish the underlying elements of an action in negligence **nor can it be invoked to create a duty where one does not exist**." *Gardner by Gardner v. Consol. Rail Corp.*, 573 A.2d 1016, 1020 (Pa. 1990) (citations omitted and emphasis in original).

In *Billo*, our Supreme Court addressed whether the Workmen's Compensation Act of 1915 barred the plaintiff's negligence claim against the defendant-employer. *Billo*, 195 A. at 112. In that case, the plaintiff alleged in his complaint that he had "contracted the occupational disease of silicosis as a result of inhaling" various kinds of toxic dust while working in the defendant's steel mill and the defendant had been negligent in failing to provide sufficient exhaust fans and ventilation to remove the dust. *Id.* at 111-12. The *Billo* Court concluded that the plaintiff's claim was not within the scope of the Workmen's Compensation Act because that act applied "to all accidents occurring within this Commonwealth" and the plaintiff's claim did

not arise from an "accident." **Id.** at 114. The Court also observed that if "a man contracted smallpox through another's negligence, he would have a right of action against the tort-feasor. To be **stricken with disease** through another's negligence is in legal contemplation as it often is in the seriousness of consequences, no different from **being struck with an automobile** through another's negligence." **Id.** (emphases in original).

In **Smith**, the plaintiff sued the defendant for negligence, fraud and deceit, intentional infliction of emotional distress, and battery, alleging that she and the defendant had been in a romantic relationship, the defendant represented that he did not have any sexually transmissible diseases, and that the plaintiff was subsequently diagnosed with a sexually transmissible disease. **Smith**, 11 Pa. D. & C. 4th at 663. The defendant filed preliminary objections in the form of a demurrer arguing, among others, that the plaintiff had not established that he breached a legal duty. **Id.** at 663-64 The trial court in **Smith** observed that the **Billo** Court's pronouncement regarding a cause of action in negligence for spreading smallpox to be *dicta*. **Id.** at 664-65 (citing **Billo**, 195 A. at 114). Instead, the trial court relied on the decisions of courts of other states, explaining that "[m]any jurisdictions recognize a cause of action for negligence involving the transmission of a sexual disease." **Id.** at 664 (citing, *inter alia*, **B.N. v. K.E.**, 538 A.2d 1175 (Md. 1989)). Therefore, the trial court dismissed the defendant's preliminary objections. **Id.** at 665-66.

In ***DiMarco v. Lynch Homes-Chester Cnty., Inc.***, 583 A.2d 422 (Pa. 1990), our Supreme Court examined "whether a physician owes a duty of care to a third party where the physician fails to properly advise a patient who has been exposed to a communicable disease, and the patient, relying upon the advice, spreads the disease to the third party." ***DiMarco***, 583 A.2d at 423.

The ***DiMarco*** Court explained that

> [the plaintiff] averred in his complaint that he contracted hepatitis after he had intimate relations with a woman who had been exposed to hepatitis eight weeks prior to the sexual relations; that this woman had been told by her doctors, [the defendants], that if she remained symptom free for six weeks, she would not have been infected by the hepatitis virus; that in reliance upon that advice, the woman abstained from sexual relations for eight weeks; and that the advice of the [defendants] was wrong in that the waiting period should have been twenty-six weeks.

> \*   \*   \*

> When a physician treats a patient who has been exposed to or who has contracted a communicable and/or contagious disease, it is imperative that the physician give his or her patient the proper advice about preventing the spread of the disease. Communicable diseases are so named because they are readily spread from person to person. Physicians are the first line of defense against the spread of communicable diseases, because physicians know what measures must be taken to prevent the infection of others. The patient must be advised to take certain sanitary measures, or to remain quarantined for a period of time, or to practice sexual abstinence or what is commonly referred to as "safe sex."

> Such precautions are taken **not** to protect the health of the patient, whose well-being has already been compromised, rather **such precautions are taken to safeguard the health of others**. Thus, the duty of a physician in such circumstances extends to those "within the foreseeable orbit of risk of harm." If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the

- 9 -

physician should recognize that the services rendered to the patient are necessary for the protection of the third person.

*Id.* at 424-25 (citation and footnote omitted and emphases in original). The *DiMarco* Court further held that "the class of persons whose health is likely to be threatened by the patient includes **any** one who is physically intimate with the patient[,]" and concluded that the plaintiff's complaint stated a cause of action in negligence against the defendants. *Id.* at 425 (emphasis in original).

It is well-established that "decisions are to be read against their facts," and that this axiom "prevents the wooden application of abstract principles to circumstances in which different considerations may pertain." *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009) (citation omitted). Further, "*dicta* is an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. *Dicta* has no precedential value." *Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1243 n.11 (Pa. 2015) (citation and quotation marks omitted)).

Additionally, this Court has explained that "decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." *Hirsch v. EPL Techs., Inc.*, 910 A.2d 84, 89 n.6 (Pa. Super. 2006) (citation omitted). Similarly, the decisions of federal district courts and of courts in other states are not binding on this Court, but

we may rely on them for their persuasive value.  *See Umbelina v. Adams*,

34 A.3d 151, 159-60 nn.2-3 (Pa. Super. 2011).

Here, the trial court explained:

Pennsylvania does not impose "a general, all encompassing common law duty not to transmit a ubiquitous, communicable virus to another person."  Preliminary Objections to Amended Complaint, ¶ 24[, R.R. at 26a].  Indeed, the cases relied upon by [Appellant] — *Billo v. Allegheny Steel Co.*, 195 A. 110 (Pa. 1937); and *Smith v. Walker*, 11 Pa. D. & C. 4th 663 (Cumberland Cty. 1991) — only confirm [Appellee's] argument.

*Billo* is an occupational exposure case where our Supreme Court considered:

> Where there is nothing in the pleadings or in the evidence to remove either party from the provisions of the Workmen's Compensation Act of 1915 . . . , is not the action barred by the employee's voluntary and contractual surrender of his right to any form or amount of compensation or damages for any injury or death occurring in the course of his employment other than as provided by article 3 of said act . . . ?

*Billo*, 195 A. at 112.  In addressing that larger question, then-Justice George W. Maxey posited that a person who contracts smallpox from another would have a right of action in negligence.  *Id.* at 114.  That passage, which [Appellant] seizes upon to support his duty analysis, is *dicta* and not binding precedent on the issue before this court.

*Smith* is readily distinguishable because that case involved an alleged knowing transmission of a sexual disease by an identifiable defendant who misrepresented to the plaintiff prior to a sexual encounter that he did not have the disease.  *Id.*, 11 Pa. D. & C. 4th at 664.  Notably, while the trial court in *Smith* overruled the defendant's preliminary objections, it expressly characterized the above-referenced passage from *Billo* as *dicta* but noted that many jurisdictions recognize a cause of action for **transmitting a sexual disease**.  *Id.* (emphasis added).  In any event, the trial court decision from Cumberland County is not binding precedent and does not compel a finding that [Appellant] has asserted a recognized theory of liability here.  Thus, this court properly

- 11 -

concluded that a recognized duty of care does not exist under the circumstances alleged in the amended complaint and leave to amend further would have been futile.

Trial Ct. Op. at 4-5 (some citations and some footnotes omitted).

Based on our review of the record, we agree with the trial court's analysis that Pennsylvania law does not recognize a cause of action in negligence for the transmission of a communicable disease.

First, **Billo** did not address whether the plaintiff had a cause of action for negligence against his employer for contracting an occupational disease; rather, the issue before our Supreme Court was whether the Workmen's Compensation Act of 1915 precluded the plaintiff's suit. **See Billo**, 195 A. at 111-14. Although the **Billo** Court remarked that a person would have a cause of action against a tortfeasor who negligently caused a person to contract the disease, that statement is *dicta* because that question was not before the **Billo** Court. **See Castellani**, 124 A.3d at 1243 n.11; **Maloney**, 984 A.2d at 485-86. Further, the facts of **Billo** are readily distinguishable from those of this case because this case involves COVID-19, a viral disease, while the plaintiff in **Billo** claimed that his health condition was caused by the toxic dust that he inhaled while working at the defendant's steel mill. **See Billo**, 195 A. at 111-12.

We do not find **Smith** to be controlling here. First, **Smith** is a Court of Common Pleas decision, therefore, it is not binding on this Court. **See Hirsch**, 910 A.2d at 89 n.6. Further, the **Smith** decision did not apply Pennsylvania law. Instead, the **Smith** Court acknowledged that the **Billo** Court's

pronouncement regarding a cause of action for contracting a disease was *dicta*, and relied on out-of-state decisions to conclude that the plaintiff could maintain a cause of action for negligence involving the transmission of a sexual disease. *See Smith*, 11 Pa. D. & C. 4th at 664. While the courts of this Commonwealth may rely on the decisions of the courts of other states for their persuasive value, they are not binding on our courts. *See Umbelina*, 34 A.3d at 160 n.3. Additionally, *Smith* is factually dissimilar and distinguishable from the instant case which involves allegations of the negligent transmission of COVID-19, a respiratory illness from a caregiver to a customer, in contrast to *Smith* which deals with a sexually transmitted disease in a romantic relationship. For these reasons, we conclude that *Smith* is neither controlling nor persuasive authority.

In the instant case, Appellant alleged in the amended complaint that Appellee provided "non-medical, home[,] and personal care services and assistance to Decedents[.]" R.R. at 6a. Based on the foregoing, we conclude that although Pennsylvania recognizes that a **physician** owes a duty of care to certain third parties to advise a patient to take precautions against the spread of a communicable disease, no Pennsylvania appellate court has held that a layperson has a duty of care to take such precautions.[4] *See DiMarco*,

_____

[4] We note that in his reply brief, Appellant argues, for the first time, that Appellee owed Decedents a duty of care because Appellee had a special relationship to Decedents pursuant to Restatement (Second) of Torts § 314 (1965). Appellant's Reply Brief at 1-3. First, our Supreme Court has
*(Footnote Continued Next Page)*

583 A.2d at 424-25. Further, although Appellee's employees provided services to Decedents, neither Section 302 nor Section 323 of the Restatement (Second) of Torts can be used to create a duty where one does not exist. **See Gardner**, 573 A.2d at 1020; **Moore**, 538 A.2d at 118. For these reasons, Appellant is not entitled to relief on this claim.

### Whether the Courts Should Impose a Duty of Care to Avoid Transmitting a Contagious Disease

Appellant alternatively argues that even if Pennsylvania does not currently recognize a duty to avoid transmitting a contagious disease, this Court should conclude that Appellee owed such a duty to Decedents based on the five-factor test set forth in **Althaus v. Cohen**, 756 A.2d 1166 (Pa. 2000). Appellant's Brief at 19-30.

"The determination whether to impose affirmative common-law duties as a predicate to civil liability is a matter of law; accordingly, our review is plenary." **Seebold**, 57 A.3d at 1243 (citation omitted). Further, because this is an appeal from an order sustaining preliminary objections in the nature of a demurrer, we take the averments of Appellant's complaint as true and view them in the light most favorable to Appellant. **Id.**

---

explained that "an appellant is prohibited from raising new issues in a reply brief." **Reginelli v. Boggs**, 181 A.3d 293, 307 n.15 (Pa. 2018) (citation omitted)). Additionally, this issue is waived because Appellant did not raise this issue before the trial court. **See PCS Chadaga v. Torres**, 252 A.3d 1154, 1158 (Pa. Super. 2021) (stating that "[a] new and different theory of relief may not be successfully advanced for the first time on appeal" (citations omitted)); **see also** Pa.R.A.P. 302(a).

In **Walters**, our Supreme Court stated:

We have characterized the duty inquiry as the "primary" inquiry in negligence. To assist us in identifying a previously unrecognized duty, we rely upon five factors: "(1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." **Althaus**, 756 A.2d at 1169.

**Walters**, 187 A.3d at 222 (footnote and some citations omitted).

Additionally, our Supreme Court has emphasized that "neither foreseeability nor any other single consideration of policy is 'alone determinative of the duty question.' Rather, we must afford such weight to each factor as is warranted by 'the particularized nature of the asserted duty at hand and context.'" **Id.** at 229-30 (citation omitted); **cf. Atcovitz v. Gulph Mills Tennis Club, Inc.**, 812 A.2d 1218, 1223 (Pa. 2002) (explaining that the Supreme Court's conclusion in that case rested on its analysis of the fifth **Althaus** factor).

Finally, our Supreme Court has cautioned:

Although our **Althaus** analysis applies principles well-rooted in the common law, we long have recognized that determining whether to impose a duty of care in novel circumstances can prove difficult, requiring policy judgments generally reserved for legislative action. In **Althaus**, and in several other cases, we have quoted Dean William Prosser's influential comments:

These are shifting sands, and no fit foundation. There is a duty if the court says there is a duty; the law, like the Constitution, is what we make of it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question. . . . The word serves a useful purpose in directing attention to

- 15 -

the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none. In the decision whether or not there is a duty, many factors interplay: the hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.

William L. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 15 (1953). Thus, determining whether to impose a duty often requires us to weigh amorphous public policy considerations, which may include our perception of history, morals, justice and society.

Our concern for the hazards of judicial policy-making has prompted our continuing restraint.

The adjudicatory process does not translate readily into the field of broad-scale policymaking. For this reason, and because the Legislature possesses superior policymaking tools and resources and serves as the political branch, we took the position . . . that we would not direct the substantive common law away from well-established general norms in the absence of some clear predominance of policy justifications.

*Walters*, 187 A.3d at 222-23 (footnotes and some citations omitted and formatting altered); *see also id.* at 229 (explaining that regarding the *Althaus* factors our "default position that, unless the justifications for and consequences of judicial policy-making are reasonably clear with the balance of factors favorably predominating, we will not impose new affirmative duties" (citation omitted and formatting altered)); *Seebold*, 57 A.3d at 1245 & n.19 (noting that "it is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations" and

"before a change in the law is made, a court, if it is to act responsibly must be able to see with reasonable clarity the results of its decision and to say with reasonable certainty that the change will serve the best interests of society" (citations omitted and formatting altered)).

Lastly, we note that "[i]t is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Bell v. Willis*, 80 A.3d 476, 479 (Pa. Super. 2013) (citation omitted).

Here, the trial court explained:

> Addressing th[e *Althaus*] factors *seriatim*, this court first concluded that the relationship between Decedents and [Appellee], which involved the provision of non-medical personal care services, does not weigh in favor of creating the duty of care advanced by [Appellant]. Rather, and in conjunction with factors two and four,[FN6] to impose such a duty would diminish the care and services available to the elderly and infirm, permit recovery on the basis of mere speculation and lead to an explosion of litigation against individuals and businesses. Finally, this court concluded that the overall public interest would not be served by endorsing the broad duty of care [Appellant] has attempted to plead.
>
> > [FN6] [Appellee] conceded for purposes of its preliminary objections that factor three - the nature of the risk imposed and foreseeability of the harm incurred - weighed in [Appellant's] favor.

Trial Ct. Op. at 6.

### The Relationship Between the Parties

Appellant claims that Appellant contends that the first *Althaus* factor, the relationship between the parties, weighs in favor of recognizing that

- 17 -

Appellee had a duty because Appellee was providing "in-home personal care services" to Decedents and the purpose of Appellee's business is to "provide care and services for" elderly and at-risk customers, such as Decedents. Appellant's Brief at 22-26 (citing, *inter alia*, **Walters**, 187 A.3d at 232).

> Regarding the first factor, it is well established that
>
> Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time. Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions.
>
> The relationship between the parties, therefore, does not have to be a specific, legally defined relationship, *e.g.*, bailor-bailee, licensor-licensee, or business invitee.

**Charlie v. Erie Ins. Exch.**, 100 A.3d 244, 252 (Pa. Super. 2014) (citations omitted and formatting altered).

On this record, it is clear that Appellee had a contractual relationship with Decedents to provide in-home personal care services, but Appellee is not a medical provider. **See** R.R. at 6a. As discussed above, a **medical** provider has a duty of care to advise an infected patient about how to prevent the spread of their disease. **See DiMarco**, 583 A.2d at 424-25. Our research has not uncovered legal authority under current Pennsylvania law for this Court to impose the higher duty of care that medical providers owe to their patients upon parties that do not provide medical services. Therefore, we conclude that this factor does not weigh in favor of imposing a duty on Appellee, who is not a medical provider.

The Social Utility of the Actor's Conduct

Appellant argues that the second factor, the social utility of Appellee's conduct, weighs in his favor because of the risk of serious illness and death that elderly and at-risk individuals face if they become infected with COVID-19.  Appellant's Brief at 25-27.

In **Walters**, the plaintiffs sued the University of Pittsburgh Medical Center (UPMC) and several others, alleging that UPMC had been negligent in failing to report a former radiology technician to law enforcement after UPMC terminated his employment for stealing fentanyl.  **Walters**, 187 A.3d at 221. The plaintiffs alleged that the radiology technician had been fired from UPMC for stealing intravenous fentanyl, injecting himself with the fentanyl, and returning the used syringes to where the syringes could be used by others to inject patients.  **Id.** at 219-20.  The plaintiffs argued that UPMC was negligent because the radiology technician was subsequently hired by another hospital where he continued stealing fentanyl and the syringes he contaminated were later used on the plaintiffs, who contracted hepatitis C.  **Id.**  Our Supreme Court granted allowance of appeal to consider whether UPMC had a duty of care to its patients to report the technician's theft of the fentanyl.  **Id.** at 221 n.8.

In applying the **Althaus** factors, the **Walters** Court explained that there was social utility in defendant UPMC providing health care, but that its failure to report the technician's theft of the fentanyl to law enforcement and take additional steps to ensure that the technician "did not repeat his dangerous

and criminal conduct while employed with other health care providers . . . lacks all social utility." **Walters**, 187 A.3d at 234-35; **see also Breslin v. Mountain View Nursing Home, Inc.**, 171 A.3d 818, 825 (Pa. Super. 2017) (explaining that with respect to the social utility factor "[t]he need for prevention of nursing home mismanagement and understaffing is unquestionable, as is the importance of proper care and treatment of nursing home patients[,]" and concluding that this factor favored imposing a duty of care on the defendant nursing home towards its patients because the defendant "was in the best position to ensure the non-negligent care of its patients, and thus, it possessed the ability to limit its liability by acting reasonably with respect to its patients").

Here, Appellee's conduct consisted of providing personal care services to Decedents in their residence. **See** R.R. at 6a, 12a-13a. The social utility of Appellee's conduct weighs in favor of imposing a duty because their services assist those who need personal care while residing in their homes. Further, allowing Appellee's employees to spread communicable illnesses to their clients does not serve that purpose. **Accord Walters**, 187 A.3d at 234-35; **Breslin**, 171 A.3d at 825. Therefore, we conclude that the social utility factor weighs in favor of imposing a duty on Appellee.

<u>The Nature of the Risk Imposed and Foreseeability of the Harm</u>

Appellant and Appellee agree that the third factor weighs in favor of imposing a duty. Appellant's Brief at 27 (citing R.R. at 49a); Appellee's Brief at 24.

"Regarding the third factor, duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *R.W. v. Manzek*, 888 A.2d 740, 747 (Pa. 2005) (citations omitted). Our Supreme Court has described this factor as the "most elusive *Althaus* factor, both in its definition and in determining the weight it should be afforded." *Walters*, 187 A.3d at 236.

Both government health authorities and the courts have recognized that older individuals have a higher risk of developing severe symptoms and dying from COVID-19. *See, e.g.*, *United States v. Smith*, 482 F.Supp.3d 1218, 1224-25 (M.D. Fla. 2020); *Thakker v. Doll*, 451 F.Supp.3d 358, 365 (M.D. Pa. 2020); CDC, "Factors That Affect Your Risk of Getting Very Sick from COVID-19," https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html (last visited Aug. 31, 2023).

Both Decedents were in their eighties, and consequently COVID-19 posed a higher risk to their health than to younger individuals. Appellee provided personal care services to Decedents in their home. Therefore, we agree with the parties that the foreseeability factor weighs in favor of imposing a duty on Appellee. *Accord Walters*, 187 A.3d at 236-37 (concluding that the nature of the risk and foreseeability of harm factor weighed in favor of imposing a duty where the theft of injectable medication both deprived patients of their prescribed medication and placed them at risk of contracting a disease via the previously used syringes, in that case hepatitis C).

The Consequences of Imposing a Duty Upon the Actor

Appellant asserts that the fourth factor, the consequences of imposing a duty upon Appellee, weighs in favor of finding a duty exists because the additional burden of taking reasonable precautions to avoid spreading COVID-19 is not prohibitively expensive. Appellant's Brief at 27-29 (citing, *inter alia*, **Estate of Madden v. Southwest Airlines, Co.**, 2021 WL 2580119, at *6 (D. Md. filed June 23, 2021) (unpublished mem.)). In support, Appellant notes that the District Court in **Estate of Madden** explained that the consequences of imposing a duty would require employers to follow best practices to protect their employees from COVID-19 but ultimately found against imposing a new duty because the plaintiff was a third party to the employer-employee relationship. **Id.** at 28.

The plaintiffs in **Estate of Madden** were a Southwest Airlines flight attendant and the estate of her late husband. **Estate of Madden**, 2021 WL 2580119, at *1. The complaint alleged that the flight attendant participated in Southwest's mandatory training, during which she was exposed to COVID-19. **Id.** Within two weeks of the training both plaintiffs experienced symptoms of COVID-19, the husband-decedent tested positive for COVID-19, and he subsequently died due to complications from COVID-19. **Id.** The plaintiffs alleged that defendant Southwest allegedly failed to implement reasonable safety and health protocols to prevent its employees who were participating in mandatory training from contracting or spreading COVID-19. **Id.** The District Court applied the Maryland courts' seven-factor test to

determine if Southwest owed a duty of care to the husband of its employee.

*Id.* at *4 (citing *Kiriakos v. Phillips*, 139 A.3d 1006, 1033-34 (Md. 2016)).

Among the factors that the District Court considered was the burden on

Southwest and the consequences of imposing a duty. *Id.* at *6. The Court

concluded that

> insofar as Southwest specifically is concerned, there appears little "additional" burden that imposition of a duty here would create. Employers like Southwest would be required to take reasonable steps to ensure the safety of foreseeable third parties like Mr. Madden from contracting COVID-19 as a result of Southwest's activities. To do so, employers would simply be required to follow best practices like social distancing, contact tracing, and regular sanitation protocols to protect their own employees, so that those employees do not become conduits to their cohabitants. Southwest already embraced such practices with regard to its customers—in fact, one might reasonably expect that ensuring flight attendants' safety would be a natural corollary of Southwest's promise to protect its customers.

*Id.* (citation omitted). However, the District Court found that "the broader

societal consequences of the imposition of that duty" weighed against the

finding of a duty, particularly with respect to the expansion of potential liability

for employers to claims by third parties alleging that employees had exposed

the third parties to COVID-19. *Id.* Therefore, the District Court concluded

that "[t]he 'floodgates' consequence of imposing a duty here therefore weighs

against such an imposition[]" and that Southwest did not owe a duty to the

husband as a third party. *Id.* at *7-8.

In *Seebold*, a corrections officer alleged that she became infected with

methicillin-resistant staphylococcus aureus (MRSA) after conducting searches

- 23 -

of twelve inmates infected with MRSA. ***Seebold***, 57 A.3d at 1234. The plaintiff argued that the prison's medical staff were negligent because they owed a duty of care to prison staff and inmates "to warn them of and protect them from acquiring an MRSA infection from those inmates known to be carrying the bacteria in a communicable state." ***Id.*** (citation and quotation marks omitted). Our Supreme Court observed that the assessment of whether a duty exists is "a matter for the courts, not juries. Consistent with this allocation of responsibility, we will not impose on physicians some non-specified affirmative obligation to third-party non-patients relative to communicable diseases, with juries deciding in each individual case just what the duty might be." ***Id.*** at 1247.

The ***Seebold*** Court further explained that "the default duties are administered in a fashion in which the duty is couched in general terms (*e.g.,* to use reasonable care in affirmative conduct which creates risk of harm to others), and juries frequently determine when such obligation is breached relative to particularized circumstances presented in each case." ***Id.*** However, the Court explained that "affirmative obligations above and beyond the default duties are most often considered and determined on a more specific basis, particularly where they are superimposed onto highly regulated professional undertakings." ***Id.*** at 1247-48.

Here, in his amended complaint, Appellant identifies forty-one acts or omissions by Appellee and its employees which Appellant claims were a breach of Appellee's duty to prevent the transmission of COVID-19 to Decedents.

*See* R.R. at 8a-12a. Although some of these alleged acts or omissions overlap, they cover a broad range of activity including wearing masks, regular COVID-19 testing, social distancing, and quarantining. *See id.* 8a-11a.

We conclude that *Estate of Madden* is not applicable to the facts of the instant case, as *Estate of Madden* involved an employer's duty of care to the husband of one its employees, while this case concerns whether Appellee owed a duty of care to take precautions against spreading COVID-19 to customers receiving in-home personal care services. Further, the District Court in *Estate of Madden* applied Maryland law, which is not binding on this Court. *See Umbelina*, 34 A.3d at 160 n.3.

As stated above, Appellant has alleged numerous omissions on the part of Appellee that Appellant claims are part of the proposed duty not to spread COVID-19 to customers. *See* R.R. at 8a-12a. Applying Maryland law, the District Court in *Estate of Madden* concluded that requiring businesses to "follow best practices like social distancing, contact tracing, and regular sanitation protocols to protect their own employees" from COVID-19 weighed in favor of imposing a duty of care, but declined to impose such a duty on Southwest for other reasons.[5] *See Estate of Madden*, 2021 WL 2580119, at *6-7.

---

[5] Additionally, the District Court noted that Southwest had already adopted such practices regarding its customers. *Estate of Madden*, 2021 WL 2580119, at *6. Here, there is nothing in the record to indicate that Appellee had adopted some or all of the measures Appellant raised in his amended complaint.

Although harsh, this factor as applied to the instant case, weighs against imposing the duty to take precautions against spreading COVID-19 to customers receiving personal care services upon Appellee, a non-medical provider, because of the myriad of precautions that Appellee might have had to take without clear guidance because no such affirmative common-law duty in tort currently exists under Pennsylvania law. Although the **Seebold** Court did not expressly discuss this factor, its admonitions that a court must be able to see with reasonable clarity the results of its decision and that it should have an adequately specific basis before imposing new law that creates an affirmative duty, applies here. **Accord Seebold**, 57 A.3d at 1245, 1247-48. Instantly, the lack of a clearly defined common-law duty under current Pennsylvania law mandating non-medical providers of personal care services to implement precautions not to spread COVID-19 to those in their care weighs against our imposition of such a requirement.

Overall Public Interest in the Proposed Solution

Lastly, Appellant argues that the fifth factor, the overall public interest, favors imposing a duty because it would preserve and protect the health of elderly and vulnerable citizens. Appellant's Brief at 30.

In **Atcovitz**, one of the plaintiffs suffered a non-fatal heart attack and stroke while at the defendant tennis club. **Atcovitz**, 812 A.2d at 1220. The plaintiffs sued the defendant club for negligence, arguing that the defendant owed its members a duty of care to acquire and maintain an automated external defibrillator (AED) on its premises for medical emergencies. **Id.** After

examining legislation and regulations pertaining to emergency medical services and AEDs, our Supreme Court held that the overall public interest in the proposed solution did not support imposing a duty on the defendant to acquire, maintain, and use an AED in emergencies. *Id.* at 1223-24.

In *Seebold*, our Supreme Court acknowledged that corrections officers "are exposed to occupational risks in the institutional environment, not the least of which is the potential for contracting certain communicable diseases such as MRSA. Certainly, it is vital that their safety be maintained as a high priority in institutional management." *Seebold*, 57 A.3d at 1249. However, the Court declined to recognize a new duty of care for prison medical providers, explaining that the plaintiff's "request for the imposition of a new, affirmative, common-law duty in tort on the part of physicians to undertake third-party interventions in a prison setting required a broader policy assessment." *Id.* at 1250; *see also id.* at 1251 (stating that "the present appeal does not afford an adequate foundation to make an informed social policy assessment which would support the imposition of a new affirmative duty on physicians to make third-party interventions").

On March 6, 2020, then-Governor Tom Wolf issued a proclamation declaring a state of disaster emergency related to the COVID-19 pandemic. *DeVito*, 227 A.3d at 877. To prevent the spread of COVID-19 via person-to-person interactions, Governor Wolf subsequently issued an executive order directing all businesses that the Governor deemed to be non-life-sustaining to close. *Id.* at 878-80. Additionally, Governor Wolf authorized "then-Secretary

of Health Rachel L. Levine, in her sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Health is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency." ***Corman v. Acting Sec'y of Pennsylvania Dep't of Health***, 266 A.3d 452, 456 (Pa. 2021) (footnote and quotation marks omitted). Secretary Levine directed those businesses which had not been closed pursuant Governor Wolf's executive order to implement "stringent COVID-19 mitigation protocols, including a requirement that employees and patrons alike wear face coverings while on business premises." ***Id.*** (footnote omitted). On or about July 1, 2020, Secretary Levine expanded this mandate "to require all individuals to wear masks while outdoors and unable to consistently maintain a distance of six feet from individuals who are not members of their household" and in a variety of indoor settings open to the public. ***Id.*** at 456-57, 457 n.7 (quotation marks omitted).

The General Assembly terminated Governor Wolf's disaster proclamation on June 10, 2021, and the Department of Health lifted its masking order on June 28, 2021. ***Id.*** at 457 n.7, 458. Subsequently, Secretary Levine's successor, Acting Secretary of Health Alison Beam, issued an order directing that teachers, students, staff, and other persons entering a school to wear face coverings while inside any school. ***Id.*** at 458-59. Our Supreme Court held that the Acting Secretary's order was void *ab initio* because the Acting Secretary lacked the authority to issue that order without following the rulemaking procedures of the Regulatory Review Act. ***Id.*** at

486-87. However, our Supreme Court explained that it was not "question[ing] the efficacy of masking as a means by which to curb the incidence and spread of aerosolized communicable diseases like COVID-19." *Id.* at 487. The Court further explained that

> it is not our prerogative to substitute our views for those of the policy-making branches of our Commonwealth's government, especially on an issue as fraught with uncertainty as how best to respond to an evolving public health emergency. We leave that solemn duty to the people's elected representatives and their lawful designees.

*Id.*

In this case, similar to *Atcovitz*, it would be improper for this Court to treat COVID-19-related mask mandates as establishing personal liability. *See Atcovitz*, 812 at 1223-24. Further, as stated above, policy determinations in this context are generally not within the purview of the judiciary and are best determined by other branches of government. *See Corman*, 266 A.3d at 487. Indeed, our Supreme Court has stated that changes in legal standards involving the applicable duties of care should originate from the Legislature, which "possesses superior policymaking tools and resources and serves as the political branch[]" of government. *See Walters*, 187 A.3d at 223; *see also Seebold*, 57 A.3d at 1245 n.19. To the extent that the judicial branch can recognize a new duty of care at common law, such a pronouncement must come from our Supreme Court, not this Court. *See Bell*, 80 A.3d at 479. For these reasons, we conclude that that the overall public interest factor weighs against recognizing a new duty of care.

After considering and weighing all of the **Althaus** factors, we conclude that the balance of factors does not weigh in favor of recognizing a new duty of care at common law for personal care providers to take precautions against spreading COVID-19 to customers. **See Walters**, 187 A.3d at 229. Therefore, Appellant is not entitled to relief on this claim.

### Conclusion

We certainly empathize with the family of Decedents in this tragic case. We share the sentiments expressed by Justice Wecht, "for far too many, the pain and loss wrought by this dreadful virus is incalculable. We do not intend to diminish the weight of that anguish." **Corman**, 266 A.3d at 487. However, on this record and based on current legal authority, we are constrained to conclude that Appellee did not owe a duty of care to take precautions against spreading COVID-19 to Decedents, its customers. Because Appellant cannot establish a duty of care, his second issue regarding whether his complaint pled facts with sufficient specificity is moot. For these reasons we affirm the trial court's order sustaining Appellee's preliminary objections and dismissing Appellant's amended complaint with prejudice.

Order affirmed. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/21/2023*